No. 10,914
Orleans

———

BENDISH v. CHICAGO DEMOLISHING COMPANY

(June 6, 1927. Opinion and Decree.)

———

(Syllabus by the Court)

1. Louisiana Digest—Appeal—Par. 625.
Where only matters of fact are involved, the judgment of the lower court will be affirmed unless clearly erroneous.

Appeal from the First City Court, Section "B". Hon. Val J. Stentz, Judge.

Action by Mark Bendish against Chicago Demolishing Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Chas. A. Danna, of New Orleans, attorney for plaintiff, appellee.

Woodville & Woodville, of New Orleans, attorneys for defendant, appellant.

JONES, J. This is a suit on a written contract, dated July 20, 1926, to recover the sum of two hundred and 00-100 ($200.00) dollars, purchase price of two buildings sold by the plaintiff to the defendant company, to be demolished by the said defendant company. The defense admits the execution of this contract and pleads, as an offset to the debt, a bill of one hundred and six and 40-100 ($106.40) dollars for material taken from the said buildings by the plaintiff under the terms of the contract, and a further offset of eighty and 00-100 ($80.00) dollars for certain sales purchased by the plaintiff, and not paid for. Since this case was tried in the lower court, the slates have been sold and that item has been dropped.

The trial judge gave judgment for plaintiff for the full amount, with reservation of defendant's rights, and defendant has appealed.

The evidence shows that there were two buildings to be demolished, the front of wood and the rear of brick. Under the contract, the plaintiff or seller was entitled to retain from the rear building all

serviceable framing lumber at eighteen and 00-100 ($18.00) dollars per thousand, and all the serviceable framing lumber in the front building was to be left stacked on the premises and three thousand cleaned bricks as property of plaintiff (free of charge). In the itemized bill plaintiff is charged with 100 pieces of 3x10x18 and with ten pieces of 3x8, 300 feet of weatherboarding, 2800 bricks and $10.20 for certain water pipes.

The plaintiff and his foreman both swear positively that no lumber was ever used from the rear building and none was ever ordered. This foreman also says that the defendant had two trucks hauling away lumber, bricks and slates and that he had one wagon hauling trash out of the yard; that he began to cut some of the lumber for the new building, which he erected on the site after the other buildings were removed, from the front building as it was being taken down.

Bowden, a carpenter for plaintiff on the job, says he saw some laborers hauling away trash for plaintiff and the trucks hauling away material for defendant, but did not see what it was.

Hibered, who lives across the street and visited the work twice every day for his father-in-law, the owner of the lots, saw the defendant's trucks hauling away bricks, lumber and slate from the rear building and a colored laborer hauling trash.

Clay Thibodaux, a carpenter, who came on the job when it was nearly completed, saw the old colored man hauling trash.

It was admitted by counsel that the old colored man, who was in court, would swear that he hauled away nothing but trash.

The president of the defendant company says that he found considerable material cut when he first went on the job and called plaintiff's foreman's attention to it; that plaintiff's workmen had started to demolish the front building, but weren't qualified to do it and then, when he had practically finished the rear building, plaintiff had requested him to take the front building down.

It will be noted here that the contract reads in part as follows:

"We will pay the sum of $200.00 for the double one-story attic building and the two-story brick building in the rear on the premises known by municipal number 1423-25 Burgundy street. We are to start work at once and clear away all surplus debris derived from the demolition."

Apparently the work of demolishing both buildings was to be done by defendant and the statement of defendant's president does not accord with the contract.

This witness then identified a pencil memorandum of the lumber, which had been made by him and plaintiff together and stated that plaintiff told him he had used three hundred feet of weatherboarding and twenty-eight hundred bricks from rear building and had fixed the price of the water pipe removed by him at ten and 20-100 ($10.20) dollars; that he knew lumber was cut up, but did not know whether it went in new building. When asked by the court if he gave Mr. Bendish a copy of his statement at the time it was made, he answered "No, we usually make dray receipts, and the reason he did not get it is we did not have his address; he was not much on the job; otherwise he would have received it on the job".

This is a poor reason. If plaintiff's address was unknown and he was rarely on this job, it was all the more necessary to have him sign the receipt then and there.

He further states that plaintiff had taken three thousand bricks, before he took the twenty-eight hundred which are involved here, and that he left all the serviceable framing lumber on the premises at plaintiff's request; that the rear building had been demolished and the front building was being demolished when check was made with plaintiff.

Defendant's foreman says he saw his president with plaintiff, but noticed no checking. Later he says he did see checking; that he saw plaintiff using lumber from both buildings, but he took front building first, getting the 2x6 from the front and "they used all the joists in the back building".

Toca, a witness for defendant, says he saw plaintiff's carpenters sawing lumber, but when asked where it came from answered: "I could not say, we were demolishing the front part".

Defendant's able attorney attempts to show from the dimensions and size of the new building that the floor joists for theirs must have been taken from the rear building, because a large number of such joists were used. This argument, while more or less persuasive, is not convincing, because plaintiff and his foreman both swear that they bought eleven hundred and 00-100 ($1100.00) dollars worth of lumber from Hortman for the new building and some new floor joists were used.

Defendant's president, when placed on the stand a second time, says they worked on both buildings at the same time and that he did not know whether the 3x8x10, used for floor joists, came out of the front or back.

This analysis shows that defendant has failed to make his claim certain, and for that reason the judgment is affirmed.